IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BARBARA S. COX,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 12-065-GPM-CJP** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge G. Patrick Murphy pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Barbara S. Cox seeks judicial review of the final agency decision denying her Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.[1]

## Procedural History

Ms. Cox applied for benefits in November, 2008, alleging disability beginning on April 1, 2006. (Tr. 127, 137). The application was denied initially and on reconsideration. After a hearing, Administrative Law Judge (ALJ) Stuart T. Janney denied the application on October 29, 2010. (Tr. 16-25). Plaintiff's request for review was denied by the Appeals Council, and the

---

[1]The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

October 29, 2010, decision became the final agency decision.  (Tr. 1).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this court.

### Issues Raised by Plaintiff

Plaintiff raises the following issues:

(1)     The ALJ erred in evaluating the medical evidence.

(2)     The ALJ erred in his determination of plaintiff's credibility

### Applicable Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**  A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** However, limitations arising from alcoholism or drug use are excluded from consideration of whether a claimant is disabled.  **42 U.S.C. §423(d)(2)(C); 20 C.F.R. §404.1535.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful

activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

**Weatherbee v. Astrue, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See, *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant has a severe impairment but does not meet or equal a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  **Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984).**

The Commissioner bears the burden of showing that there are a significant number of jobs in the economy that claimant is capable of performing.  **See, *Bowen v. Yuckert*, 482 U.S. 137, 146, 107**

S. Ct. 2287, 2294 (1987); *Knight v. Chater*, 55 F.3d 309, 313 (7ᵗʰ Cir. 1995).

It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  **42 U.S.C. § 405(g).**   Thus, the question for the Court is not whether Ms. Cox was, in fact, disabled during the relevant time period, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See,** ***Books v. Chater*, 91 F.3d 972, 977-978 (7ᵗʰ Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7ᵗʰ  Cir.1995)).**

This Court uses the Supreme Court's definition of "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**  In reviewing for substantial evidence, the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7ᵗʰ Cir. 1997)**.  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7ᵗʰ Cir. 2010), and cases cited therein.**

**<u>The Decision of the ALJ</u>**

ALJ Janney followed the five-step analytical framework described above.  He concluded that plaintiff had not worked since the alleged onset date, and that she was insured for DIB

through December 31, 2008.[2] He determined that plaintiff had severe bilateral carpal tunnel

syndrome, status post open carpal tunnel release, rheumatoid arthritis, anemia and obesity.[3] He

found that plaintiff's alleged mental impairment was not severe. He found that her impairments

did not meet or equal a listed impairment, which plaintiff does not dispute.

The ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a

limited range of work at the light exertional level.[4] Relying on the testimony of a vocational

expert, the ALJ concluded that Ms. Cox was able to perform her past work as a home health care

aide. (Tr. 16-25).

### The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and

Recommendation. The following is a summary of some of the pertinent portions of the written

record, focused on the issues raised by plaintiff.

**1.** **Agency Forms**

---

[2]The date last insured is relevant to the claim for DIB, but not the claim for SSI. See, 42 U.S.C. §§ 423(c) & 1382(a).

[3]Rheumatoid arthritis is an auto-immune disease that causes inflammation of joints and surrounding tissues, and can also affect other organs. Symptoms may include joint pain and stiffness, and, over time, loss of range of motion and deformity of joints. See, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001467, accessed on October 22, 2012.

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §404.1567(b). Further, "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" and intermittent sitting for the remaining workday. SSR 83-10, 1983 WL 31251, at *6.

Ms. Cox was born in 1963, and was almost 43 years old when she allegedly became disabled in 2006. (Tr. 152). She completed the 10th grade. (Tr. 162).

In a Disability Report, plaintiff said that she was unable to work because of depression and rheumatoid arthritis. She said that she stopped working in the spring of 2006 because she had to have surgery on her arm. (Tr. 157).

In a Work Activity Report, plaintiff said that she had worked as a laborer in a greenhouse and as a home health care aid. (Tr. 168-175).

Plaintiff submitted a Function Report in December, 2008. She said that took care of her husband and a pet or pets. She said she was still able to do everything, but "it takes longer & more painful." She claimed no problems with personal care. She said that she cooked or prepared meals daily and did cleaning and laundry, but it took her longer as she had to take breaks. She drove a car and went shopping. In response to a question about how she spent her time, she wrote "household chores, dishes, laundry, vaccuming [sic], watch tv, read, make meals, shower." She said that it was hard for her to walk long distances and open things. She estimated that she could walk for one block. She claimed no problems with paying attention or finishing what she started. She said that using kitchen tools or carrying bags or groceries caused her pain in her hands and fingers. (Tr. 180-190).

After her claim was initially denied, Ms. Cox submitted a report in which she said that her rheumatoid arthritis and depression had worsened in February, 2009. She said that she was "hearing things" in her head and "thinking crazy thoughts." She said that her son and daughter-in-law had moved in with her to take care of her and the house, and that she could not lift anything over 5 pounds and could not stand longer than 5 to 10 minutes. She said that her legs,

arms and hands swell and ache.  (Tr. 199-205).

**2.**      **Evidentiary Hearing - August 30, 2010**

Plaintiff was accompanied by a representative, Walter Schultz, at the hearing.  (Tr. 30).

The ALJ described him as a non-attorney representative.  See, Tr. 16.  The record reflects that

Ms. Cox was represented throughout the administrative proceedings by the lawyer who

represents her in this Court, Charles E. Binder.  See, Appointment of Representative, Tr. 77.  On

the day of the hearing, Ms. Cox and Mr. Schultz executed another Appointment of

Representative form, indicating that Mr. Schultz also represented her, but Mr. Binder remained

her "main representative."  (Tr. 126).

Ms. Cox was 47 years old at the time of the hearing.  She lived with her husband, who

was a disabled veteran.  (Tr. 36).  She had no health insurance.  No one else lived with her and

her husband.  (Tr. 37).

She stopped working in 2006 because she had to have carpal tunnel surgery on both sides.

(Tr. 38).  She had rheumatoid arthritis and depression.  (Tr. 41).  She saw a rheumatologist for a

time, but could not afford to keep seeing him.  She took Naproxen and Prednisone for

rheumatoid arthritis.  (Tr. 42).  She had side effects of upset stomach and diarrhea.  (Tr. 44).

Ms. Cox testified that she was in constant pain.  She said that her pain was "all over" and

involved her legs, back and arms, which go numb.  Standing, walking and riding in a vehicle for

a long time made her pain worse.  (Tr. 42-43).  Medication made the pain go away for a short

time.  (Tr. 44).

She had been taking Zoloft for depression for about three years, prescribed by the doctor

who prescribed her arthritis medication.  She was scheduled to see a psychiatrist for the first time

on the day after the hearing.  She felt like she was getting worse.  (Tr. 44-45)

Plaintiff testified that she had trouble sleeping at night due to pain.  She did not sleep during the day.  (Tr. 47).

Her daughter-in-law cooked meals for plaintiff and her husband, did their laundry and cleaned the house.  Her son did the yardwork.  (Tr. 47-49).

She could stand for 5 to 10 minutes and could walk for maybe 15 minutes.  She could lift a gallon of milk.  She could sit for 15 minutes.  (Tr. 50-51).  She had trouble writing and tying her shoes.  (Tr. 52-53).

A vocational expert also testified.  The ALJ asked the VE to assume a person who was limited to work at the light exertional level, able to stand/walk for 6 out of 8 hours and to sit for 6 out of 8 hours, but limited to only occasional postural activities (e.g., climbing, stooping, kneeling), but no climbing of ladders, ropes or scaffolding.  She was further limited to only frequent handling and fingering, and no concentrated exposure to hazards such as moving machinery and heights.  The VE testified that this person could do Ms. Cox' past work as a home health care aide as it had been performed by her.  (Tr. 55-56).  The VE testified that she could also do other jobs such as cashier, laundry worker and counter clerk.  (Tr. 57).

**3.**      **Medical Records Not Before the ALJ**

The transcript contains medical records that were not before the ALJ.  As of the time the ALJ issued his decision, the medical records consisted of Exhibits 1F through 20F, i.e., Tr. 233 through 436.  See, List of Exhibits attached to ALJ's decision, Tr. 26-29.  At the hearing, the ALJ confirmed that the last medical evidence was Exhibit 20F, and plaintiff's representative stated that he had "nothing new to offer, and no objections to the record."  (Tr. 33).  He did not

ask the ALJ to hold the record open for the submission of additional evidence.

Plaintiff submitted the additional records to the Appeals Council, which considered them in connection with her request for review.  See, AC Exhibits List, Tr. 5-6.  Thus, the medical records at Tr. 437-490, designated by the Appeals Council as Exhibits 21F and 22F, were not before the ALJ.

The medical records at Tr. 437-490 cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence.  Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error."  **Luna v. Shalala, 22 F3d 687, 689 (7th Cir. 1994).**  See also, **Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008);  Rice v. Barnhart, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).**

**4.**     **Medical Records**

Ms. Cox alleges that she became disabled in April, 2006, but the first relevant medical records are from 2008.  She saw Dr. Frank Lee for pain and numbness in her right hand in March, 2008. Dr. Lee diagnosed advanced right carpal tunnel syndrome and synovitis or a ganglion cyst which was causing mechanical locking of her fingers.  (Tr. 263).  Dr. Lee performed a right carpal tunnel release and synovectormy on March 25, 2008.  (Tr. 235-236).  In a post-operative visit, he noted that the pathology report showed chronic inflammation, which was consistent with rheumatoid arthritis.  (Tr. 262).

On October 29, 2008, primary care physician Robb Frost, M.D., diagnosed plaintiff with rheumatoid arthritis.  She weighed 214 pounds.  She complained of pain in her elbow and wrist. She needed a refill of Zoloft, and wanted to discuss diet pills.  (Tr. 252).

Vittal Chapa, M.D., performed a consultative physical examination on February 5, 2009. She told Dr. Chapa that she ached all over, and she had pain in different joints on different days. She said that she could not bend her knees. She was taking antidepressants. On examination, she was 64 inches tall and weighed 225 pounds. She was able to bear weight and walk without any aids. She was alert and oriented and in good contact with reality. Her legs were not swollen. She had no specific motor weakness or muscle atrophy. Pinprick sensation was normal in the legs. She had no joint redness or heat. Her right knee was swollen about 1+, and she had pain on range of motion of the knee. The range of motion of both knees was decreased. She had no paravertebral muscle spasm and lumbosacral spine flexion was normal. She had full range of motion of the shoulders, elbows, wrists, ankles and hips. Hand grip was full bilaterally. She was able to perform fine and gross manipulations with both hands. She had no difficulty putting her shoes on or tying her shoe laces. (Tr. 275-280).

Stephen Vincent, Ph.D., performed a consultative psychological evaluation on February 5, 2009. Plaintiff told him that she was depressed and had been taking Zoloft for about 4 months. She was adjusting to physical limitations resulting from rheumatoid arthritis. She said she could not function as she had in the past, and she felt sad, discouraged, useless and worthless. She denied any suicidal thoughts and denied any problems with memory or concentration. On examination, she was oriented, with a mildly to moderately depressed mood and affect. Her thought processes were slow and deliberate, but logical, coherent and relevant. Her effort was fair. Dr. Vincent noted that she had no signs of depression prior to the onset of rheumatoid arthritis. She was being monitored by Dr. Frost. The diagnostic impression was mood disorder secondary to general medical condition with major depressive-like features. (Tr. 282-284).

Dr. Frost referred Ms. Cox to Dr. Jason Guthrie at the Springfield Clinic for evaluation of her rheumatoid arthritis in April, 2009.  Dr. Frost had prescribed Methotrexate, but she had stopped taking it as it did not relieve her pain.  Dr. Guthrie noted that her physical exam was basically normal except for slightly decreased grip strength and tenderness in her ankles.  She had some increased liver enzymes, so he ordered liver function studies along with other testing.  He advised her that the dosage of Methotrexate that she had been on was inadequate to relieve inflammation.  He prescribed Relafen for pain.  (Tr. 314-315).  After further testing, Dr. Cheruku of the Springfield Clinic ordered an abdominal ultrasound, which showed no liver mass or biliary obstruction.  (Tr. 370).

Ms. Cox was seen by a physician's assistant at Confidence Medical Associates on December 4, 2009, for depression.  She said that she had been on Zoloft for about a year, as well as Ativan as needed, which helped some, but she continued to have a lot of anxiety and insomnia.  She was depressed at times and worried a lot.  On exam, her mood was fair, her affect was appropriate and her thought processes were goal directed.  The assessment was depression.  She was to continue on Zoloft and Ativan, and add Trazodone.  (Tr. 394).

A chiropractor treated plaintiff for low back pain on three visits in December, 2009, and January, 2010.  She reported a 50% decrease in her back pain.  (Tr. 389).

Ms. Cox returned to Dr. Frank Lee in April, 2010, complaining of a four month history of constant numbness and tingling in her left hand.  He diagnosed carpal tunnel syndrome.  He noted that she had "done very well" after her carpal tunnel surgery on the right hand.  (Tr. 432).  Dr. Lee performed a carpal tunnel release and synovectormy on the left on April 16, 2010.  She was doing well with her hand on April 28, 2010, but complained she began having pain in her

right knee about two weeks earlier.  She had clicking and swelling.  Most of her pain was in the

lateral joint.  She was given Celebrex samples.  (Tr. 431).

Dr. Shadi Altwal completed a questionnaire in which he assessed plaintiff's functioning

on June 30, 2010.  He said that he began treating her in February, 2010, and saw her monthly.

The diagnoses were rheumatoid arthritis, carpal tunnel syndrome, anemia and depression.  He

indicated clinical findings of small joint pain and swelling, hand numbness and weakness.  Her

primary symptoms were fingers/joint pain and swelling, hand numbness, fatigue and "sad."  She

had pain in the small joints of her hands and her knees.  Her pain was increased by walking and

climbing stairs.  Dr. Altwal said that she had a limited residual functional capacity.  She could sit

and stand/walk for a total of 0-1 hours a day.  She must get up and move around every 30

minutes.  She could frequently lift up to 5 pounds and occasionally lift up to 10 pounds.  She had

"significant limitations" in doing repetitive reaching, handling, fingering and lifting.   She could

do no pushing, pulling, kneeling, bending or stooping.   Her symptoms would "seldom" interfere

with attention and concentration, and she was capable of tolerating moderate stress.

(Tr. 421-429).

**5.      State agency consultant assessments**

Lionel Hudspeth, PsyD, completed a Psychiatric Review Technique form on March 2,

2009.[5]  (Tr. 289-302).  This assessment was based on a review of medical records and not a

personal examination.  Dr. Hudspeth opined that Ms. Cox no severe mental impairment.  He

noted that she had a mood disorder secondary to physical issues and adjustments to daily

---

[5]The Psychiatric Review Technique form is part of the "special technique" used by the
agency in evaluating alleged mental impairments.  The special technique is explained in 20
C.F.R. §404.1520a.

functioning.   Dr. Hudspeth noted that most of her problems appeared to be caused by her

physical condition, and plaintiff had not indicated that she was psychologically limited in the

function report that she had submitted.

Dr. Sumanta Mitra completed a Physical RFC assessment on March 5, 2009.  (Tr. 303-

310).  Dr. Mitra opined that plaintiff was capable of light work, including standing/walking for a

total of 6 hours a day and sitting for a total of 6 hours a day.  She had no limitations in ability to

push/pull.  She was limited to only occasional postural activities, and should never climb ladders,

ropes or scaffolds.  She had no manipulative limitations.  She should avoid concentrated

exposure to hazards such as machinery and heights.

In July and August, 2009, two more state agency consultants reviewed additional medical

records and affirmed the above reports.  (Tr. 378-380).

## Analysis

In her first point, Ms. Cox challenges the ALJ's weighing of the medical evidence.  She

first argues that Dr. Altwal's opinion, set forth in his June 30, 2010, report, should have been

given controlling weight according to the "treating physician's rule."

The opinion of a treating doctor is, of course,  not automatically entitled to controlling

weight.  Rather, it is entitled to controlling weight only where it is supported by medical findings

and is not inconsistent with other substantial evidence in the record.  ***Clifford v. Apfel*, 227 F.3d

863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).**

With regard to the assessment of treating source opinions, **20 C.F.R. §404.1527(d)(2)**

states:

Generally, we give more weight to opinions from your  treating sources, since these

sources are likely to be the medical professionals most  able to provide a detailed, longitudinal picture of your medical impairment(s) and  may bring a unique perspective to the medical evidence that cannot be obtained  from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find  that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory  diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [emphasis added]

As the Seventh Circuit recently put it, "An ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight, 20 C.F.R. §404.1527(c)(3), (4); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)." **Hall ex rel. Hall v. Astrue, 2012 WL 2948173, \*2 (7th Cir. 2012).**   The ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." **Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008)**; **Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008)**.

Here, ALJ Janney set forth a detailed review of the medical evidence.  He discussed the reasons for the weight he assigned to Dr. Altwal's opinion in great detail, supporting his rationale with references to specific evidence in the record.  ALJ Janney said that he gave little weight to Dr. Altwal's opinion that Ms. Cox could lift only 10 pounds occasionally and 5 pounds frequently, stand/walk for only 1 hour out of 8 and sit for only 1 hour out of 8 because that opinion was inconsistent with plaintiff's statements, the other medical evidence, Dr. Chapa's opinion, and the opinions of the state agency medical consultants.  He noted that the other evidence in the record did not describe significant functional limitation, and that Dr. Altwal's

assessment conflicted with Ms. Cox' own statement of her abilities given in December, 2008. (Tr. 21-24).

The ALJ's decision easily meets and exceeds the requirement that he minimally articulate his reasons for discounting Dr. Altwal's opinion.  The reasons he gave were proper considerations.  See, *Filus v. Astrue*, ___ **F.3d ___, 2012 WL 3990651, \*4 (7ᵗʰ Cir. 2012);** *Elder v. Astrue*, **529 F.3d 408, 415 (7ᵗʰ Cir. 2008)**.

Plaintiff takes issue with the ALJ's reasons for discounting Dr. Altwal's opinion.  The primary thrust of her argument is that her rheumatoid arthritis progressed such that she was much worse by the time of the hearing than she had been at the time of her Function Report in December, 2008, and Dr. Chapa's exam in February, 2009.  The problem with this argument is that, as the ALJ pointed out, it was not substantiated by the medical evidence in the record before the ALJ.  Indeed, plaintiff relies heavily on medical records that were only submitted after the date of the ALJ's decision to support her argument that she was disabled at the time of the decision.  See, Doc. 13, pp. 15-16.

As was noted above, the medical records at Tr. 437 to 490 were submitted to the Appeals Council *after* the ALJ issued his decision.  For obvious reasons, such evidence cannot be considered here.  *Luna v. Shalala*, **22 F3d 687, 689 (7ᵗʰ Cir. 1994).**  Further, most of those records post-date the ALJ's decision.  For instance, plaintiff argues that Dr. Altwal's opinion was consistent with Dr. Frost's opinion, but Dr. Frost's report was dated December 31, 2010, two months after the date of the ALJ's decision.  Plaintiff's reliance on evidence that was not before the ALJ is improper.

Plaintiff suggests, not very forcefully, that the ALJ erred in failing to creating a complete

record.  However, she was represented by counsel throughout the proceedings.  "When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits."  ***Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987).**  See also, ***Buckhanon ex. rel J. H. v. Astrue*, 368 Fed. Appx. 674, 679 (7th Cir. 2010).**  Further, much of the medical evidence relied upon by plaintiff did not even exist at the time the ALJ issued his decision.

Plaintiff also argues that the ALJ erred in his assessment of her residual functional capacity (RFC).  This argument is premised on plaintiff's view that the ALJ erred in weighing the medical evidence, and plaintiff again improperly relies on evidence that was not before the ALJ, i.e., Dr. Frost's report.

In the final analysis, plaintiff's first point is an invitation to this Court to reweigh the medical evidence.  However, it is the function of the ALJ to weigh the evidence.  Crucially, the reviewing Court is "not free to replace the ALJ's estimate of the medical evidence with [its] own."  ***Berger,* 516 F.3d at 544.**  The ALJ's decision must be affirmed if it is supported by substantial evidence and, in reviewing for substantial evidence, this Court cannot reweigh the evidence or substitute  its own judgment for that of the ALJ.  ***Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008)**.

For her second point, Ms. Cox takes issue with the ALJ's determination of her credibility.

Plaintiff correctly points out that ALJ Janney used the boilerplate language that has been repeatedly criticized by the Seventh Circuit.  See, ***Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012), and cases cited therein.**   However, it is not the use of the boilerplate language in and of itself which is objectionable; it is the use of the boilerplate language unaccompanied by findings

which are supported by evidence in the record.  *Shauger, ibid*.  The Seventh Circuit has made it

plain that, if the ALJ "has otherwise explained his conclusion adequately, the inclusion of this

[boilerplate] language can be harmless."  *Filus v. Astrue*, ___ F.3d ___,  2012 WL 3990651, *4

(7ᵗʰ Cir. 2012).  Plaintiff does not take issue with the validity of any of the reasons given by the

ALJ for his credibility analysis.  Instead, she simply points out that he used the boilerplate

language.

ALJ Janney gave valid reasons for finding that plaintiff was exaggerating the intensity,

persistence and limiting effects of her symptoms.  The ALJ noted that, while Ms. Cox claimed to

have been disabled since April 1, 2006, she reported in December, 2008, that she was able to

perform her usual daily activities, including taking care of her husband.  He noted that the

medical evidence, including Dr. Chapa's exam, contradicted her claim of disability.  These are

valid considerations.  See, 20 C.F.R. §416.929(c)(3); SSR 96-7p.  An ALJ may validly conclude

that discrepancies between plaintiff's claims and the medical record are indicative of

exaggeration.  *Getch v. Astrue*, 539 F.3d 473, 483 (7ᵗʰ Cir.2008).

The ALJ considered the relevant factors regarding plaintiff's credibility, and the reasons

he gave for his findings were supported by evidence in the record.  The fact that he did not weigh

the factors the way plaintiff would like does not mean that his credibility determination was

legally insufficient.  Plaintiff has not demonstrated any error with regard to the credibility

findings.  As the ALJ's credibility findings were not "patently wrong," they should not be

overturned.  *Powers v. Apfel*, 207 F.3d 431, 435 (7ᵗʰ Cir. 2000).  See also, *Castile v. Astrue*, 617

F.3d 923, 930 (7ᵗʰ Cir. 2010), holding that credibility findings should not be overturned where

the ALJ "thoroughly examined the evidence and clearly articulated his findings."

## Recommendation

Because the Commissioner's final decision was supported by substantial evidence and was not the product of legal errors, this Court recommends that the Commissioner's final decision denying Barbara S. Cox' application for disability benefits be **AFFIRMED.**

Accordingly, plaintiff's Motion for Judgment on the Pleadings **(Doc. 12)** should be **DENIED** and judgment should be entered in favor of defendant.

Objections to this Report and Recommendation must be filed on or before **November 13, 2012**.

**Submitted:  October 25, 2012.**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**